# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**NICHOLAS FITZGERALD**, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

**GANN LAW BOOKS, INC., GANN LEGAL EDUCATION FOUNDATION, INC. AND MICHAEL PROTZEL,**

Defendants.

## Civil Action
## 11-CV-04287 (FSH)(PS)

# PLAINTIFF NICHOLAS FITZGERALD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR: (1) FINAL APPROVAL OF THE CLASS SETTLEMENT; (2) CLASS ATTORNEY'S APPLICATION FOR FEES, COSTS AND EXPENSES, AND (3) AN INCENTIVE AWARD FOR PLAINTIFF

**BELLIN & ASSOCIATES LLC**

By: Aytan Y. Bellin, Esq.
85 Miles Avenue
White Plains, New York 10606
Telephone: (914) 358-5345
Facsimile: (212) 571-0284

*Attorneys for Plaintiff*
*Nicholas Fitzgerald and*
*The Classes*

**SCHLAM STONE & DOLAN LLP**

By: Jeffrey M. Eilender
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
(*Pro Hac Vice* motion pending)

*Attorneys for Plaintiff*
*Nicholas Fitzgerald and*
*The Classes*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv-xi

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF THE CASE .............................................................................. 3

A.      PROCEDURAL HISTORY ......................................................................... 3

      1.     The State Court Action ................................................................. 3

      2.     The Federal Court Action ............................................................ 4

B.      BACKGROUND AND SUMMARY OF THE SETTLEMENT ................... 6

C.      RESPONSE FROM THE CLASS .............................................................. 11

ARGUMENT ...................................................................................................... 14

I.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE
SETTLEMENT .......................................................................................... 14

      A.     Standard of Review .................................................................... 14

      B.     The *Girsh* Factors ................................................................... 16

            1.     Complexity, Expense, And Likely Duration Of The Litigation 17

            2.     The Reaction Of The Class To The Settlement ........................ 19

            3.     The Stage Of Proceedings And The Amount Of Discovery
Completed ................................................................................ 20

            4/5.   Risks of Establishing Liability and Damages .......................... 22

            6.     Risks of Maintaining Class Action Status through Trial ......... 24

            7.     Ability To Withstand Greater Judgment ................................... 25

            8/9.   The Range Of Reasonableness Of The Settlement Fund In Light
Of The Best Possible Recovery And All The Attendant Risks
Of Litigation ............................................................................ 26

C.     The Parties Comprehensive Notice Plan Reached A Large Percentage Of The Class And Satisfies Rule 23 And Due Process ............................................................... 28

D.     The Plan Of Allocation Is Fair And Reasonable ................................. 31

II.    THE REQUESTED ATTORNEY'S FEE AWARD IS FAIR AND REASONABLE ........................................................................ 32

A.     A One-Third Fee Award of the Common Fund is Fair and Reasonable ...................................................................... 37

1.     A One-Third Award Is Reasonable Based On The Size Of The Fund ................................................... 37

2.     Class Member Objections ........................................... 41

3.     Class Counsel Handled This Action In A Skilled And Effective Manner .................................................. 42

4.     The Litigation Involved Complex Legal Issues And Was Of Significant Duration ............................... 45

5.     The Risk of Nonpayment .......................................... 46

6.     Plaintiff's Counsel Devoted Substantial Time and Resources to This Case ...................................... 47

7.     Counsel's Fee Request Is In Line With That In Similar Cases ............................................................. 48

8.     Class Counsel Exclusively Prosecuted This Case ................... 51

9.     The Requested Fee Is Consistent With Private Contingent Fee Agreements ....................................... 51

10.    Innovative Terms Of Settlement ............................... 52

B.     A One-Third Fee Award is Reasonable Under the Lodestar Cross-Check ...................................................... 53

III.   THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE REWARD .............................................................. 58

CONCLUSION .......................................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Adams v. AllianceOne, Inc.,*
   08–CV–248–JAH (S.D. Cal. Sept. 28, 2012).................................................50

*Alleyne v. Time Moving and Storage, Inc.*
   264 F.R.D. 41 (E.D.N.Y. 2010)....................................................................40

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1998)..............................................................................15, 24

*Aramburu v. Healthcare Financial Services, Inc.,*
   No. 02-CV-6535, 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009).................31

*Arthur v. Sallie Mae, Inc.*,
   10-CV-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sept. 17, 2012).........50

*Bass v. Dellagicoma*,
   CIV. 10-1195 KSH, 2013 WL 3336760 (D.N.J. June 28, 2013) .................57

*Bell Atlantic Corp. v. Bolger,*
   2 F.3d 1304 (3d Cir. 1993) ...........................................................................19

*Bellows v. NCO Financial Systems, Inc.*,
   07-CV-1413 W, 2009 WL 35468 (S.D. Cal. Jan. 5, 2009) ..........................49

*Bellows v. NCO Financial Systems, Inc.*,
   3:07-CV-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .......49

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................................40, 41

*Brytus v. Spang & Co.,*
   203 F.3d 238 (3d Cir. 2000) .........................................................................34

*Capsolas v. Pasta Resources Inc.*,
   2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012)..................................................50

*Carnegie v. Household International, Inc.,*
   376 F.3d 656 (7th Cir. 2004) ........................................................................25

*Chavarria v. New York Airport Services*, LLC,
  2012 WL 2394797 (E.D.N.Y. June 25, 2012)................................................50

*Cosgrove v. Sullivan,*
  759 F.Supp. 166 (S.D.N.Y.1991) ..................................................................58

*Cullen v. Whitman Medical Corp.,*
  197 F.R.D. 136 (E.D. Pa. 2000) ....................................................................49

*Esslinger v. HSBC Bank Nevada, N.A.,*
  No. 10-3213, 2012 WL 5866074 (E.D. Pa. Nov. 20, 2012).........................51

*Evans v. Port Authority of New York & New Jersey,*
  273 F.3d 346 (3d Cir. 2001) ..........................................................................57

*Fitzgerald v. Gann Law Books, Inc.,* et al.,
  Docket No. L-2832-11 .....................................................................................3

*Fitzgerald v. Gann Law Books, Inc.,*
  213 N.J. 537, 65 A.3d 262 (2013) ...................................................................4

*Fitzgerald v. Gann Law Books, Inc.,*
  A-1447-11T4, 2013 WL 275886
  (N.J. Super. Ct. App. Div. Jan. 25, 2013)........................................................4

*Frederick v. Range Resources Appalachia, LLC*,
  No. 08 cv 288, 2011 WL 1045665 (E.D. Pa. March 17, 2011)....................57

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ..................................................................*passim*

*Godshall v. Franklin Mint Co.,*
  No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ....................49

*Grannan v. Alliant Law Group, P.C.,*
  C10-02803 HRL, 2012 WL 216522
  (N.D. Cal. Jan. 24, 2012)............................................................25-26, 49-50

*Greenwich Pharmaceutical Securities Litigation,*
  CIV. A. 92-3071, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) ....................59

*Gunter v. Ridgewood Energy Corp.,*
  223 F.3d 190 (3d Cir. 2000) ..................................................................*passim*

W:\FIRMDOCS\04445\00150818.DOC

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)........................................................................34

*In re American Investors Life Insurance Co. Annuity Marketing & Sales Practices*
    *Litigation,* 263 F.R.D. 226 (E.D. Pa. 2009)....................................43

*In re AT & T Corp.,*
    455 F.3d 160 (3d Cir. 2006) ...................................................*passim*

*In re Automobile Refinishing Paint Antitrust Litigation.,*
    MDL NO 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008)......................43, 48

*In re Avandia Marketing, Sales Practices and Products Liability Litigation,*
    2012 WL 6923367 (E.D. Pa. Oct. 19, 2012) ...................................53

*In re Baby Products Antitrust Litigation,*
    708 F.3d 163 (3d Cir. 2013) .........................................................41

*In re Bayer AG Securities Litigation,*
    No. 03 Civ. 1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008)................31

*In re Blech Securities Litigation,*
    2002 U.S. Dist. LEXIS 23170,
    2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002)..............................50

*In re Cendant Corp. Litigation,*
    264 F.3d 201 (3d Cir. 2001) ...................................................*passim*

*In re Charter Communications, Inc., Securities Litigation,*
    No. MDL 1506, 4:02-CV-1186 CAS,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................ 31-32

*In re Chicken Antitrust Litigation,*
    669 F.2d 228 (5th Cir.1982) .........................................................21

*In re Community Bank of North Virginia,*
    418 F.3d 277 (3d Cir. 2005) .........................................................15

*In re Computron Software, Inc.,*
    6 F. Supp. 2d 313 (D.N.J. 1998).................................................43

*In re Continental Illinois Securities Litigation,*
    962 F.2d 566 (7th Cir.1992) .........................................................51

*In re Corel Corp. Securities Litigation,*
    293 F.Supp.2d 484 (E.D.Pa. 2003)...............................................................48

*In re Diet Drugs Products Liability Litigation,*
    93 F. App'x 338 (3d Cir. 2004)...........................................................*passim*

*In re EVCI Career Colleges Holding Corp. Securities Litigation,*
    Master File Nos. 05 Civ. 10240(CM), 05 CV 10287,
    05 CV 10515, 05 CV 10610, 06 CV 00304, 06 CV 00347,
    06 CV, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)...................................31

*In re FAO, Inc. Securities Litigation,*
    Nos. 03-942, 03-6596, 2005 WL 3801469 (E.D. Pa. May 20, 2005)...........49

*In re General Instrument Securities Litigation,*
    209 F. Supp. 2d 423 (E.D. Pa. 2001)...........................................................49

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litigation,*
    55 F.3d 768 (3d Cir. 1995).................................................................*passim*

*In re Greenwich Pharmaceuticals Securities Litigation,*
    No. 92-3071, 1995 WL 251293 (E.D. Pa. April 26, 1995)...........................49

*In re Ikon Office Solutions, Inc. Securities Litigation,*
    194 F.R.D. 166 (E.D. Pa. 2000)......................................................37, 43, 48

*In re Ins. Brokerage Antitrust Litigation,*
    86 Fed. R. Serv. 3d 654 (D.N.J. 2013)..................................................52, 57

*In re Linerboard Antitrust Litigation,*
    MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) *amended,*
    MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004).................43, 54

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    205 F.R.D. 369 (D.D.C. 2002)....................................................................59

*In re Medical X-Ray Film Antitrust Litigation,*
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).................................................50

*In re Mego Fin. Corp. Securities Litigation,*
    213 F.3d 454 (9th Cir. 2000).......................................................................21

*In re Orthopedic Bone Screws Products Liability Litigation*,
  No. 1014, C.A. 97-381, 2000 WL 1622741 (E.D. Pa. Oct.23, 2000) ...........52

*In re Processed Egg Product*,
  2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) .....................................................52

*In re Prudential Insurance Company of America Sales Practice Litigation Agent
  Actions*, 148 F.3d 283 (3d Cir. 1998) ......................................................*passim*

*In re Ravisent Technologies, Inc. Securities Litigation*,
  CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...............48

*In re Remeron Direct Purchaser Antitrust Litigation*,
  03-0085 (FSH), 2005 WL 3008808 (D.N.J. Nov. 9, 2005).....................48, 51

*In re Rite Aid Corp. Securities Litigation*,
  396 F.3d 294 (3d Cir. 2005) ............................................................33, 53, 54

*In re Rite Aid Corp. Securities Litigation*,
  362 F.Supp.2d 587 (E.D. Pa.2005).................................................................57

*In re Rite Aid Corp. Securities Litigation*,
  146 F.Supp.2d 706 (E.D.Pa.2001)..................................................................50

*In re R.J.R. Nabisco Securities Litigation*,
  MDL No. 818(MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)...........58

*In re School Asbestos Litigation*,
  921 F.2d 1330 (3d Cir. 1990) .......................................................................14

*In re SmithKline Beckman Corp. Securities Litigation*,
  751 F. Supp. 525 (E.D. Pa.1991)....................................................................59

*In re Sprint Corp.* Employee Retirement Income Security Act *Litigation*,
  443 F. Supp. 2d 1249 (D. Kan. 2006) ...........................................................31

*In re Synthroid Marketing Litigation*,
  264 F.3d 712 (7th Cir. 2001) .................................................................51-52

*In re Warfarin Sodium Antitrust Litigation*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................*passim*

W:\FIRMDOCS\04445\00150818.DOC

*Interfaith Cemetery Organization v. Honeywell International, Inc.*
426 F.3d 694 (3d Cir. 2005) .................................................................. 56-57

*Kumon N. Am., Inc. v. Timban*,
CIV.A. 13-4809 RBK, 2014 WL 2932653 (D.N.J. June 27, 2014) .............57

*Lachance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1997)...................................................................54

*Landsman & Funk PC v. Skinder-Strauss Associates*,
640 F.3d 72 (3d Cir. 2011), *opinion reinstated in part*,
09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012) .....................................5

*Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.*,
421 N.J. Super.268, 23 A.3d 469 (App. Div. 2011),
*cert. denied*, 209 N.J. 96 (2011). ...................................................................3

*Loughner v. University of Pittsburgh*,
260 F.3d 173 (3d Cir. 2001) .........................................................................57

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...........................................................50

*Martin v. Foster Wheeler Energy Corp..*,
No. 06-878, 2008 WL 906472 (M.D. Pa. March 31, 2008) ..........................48

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2nd Cir. 2007) ................................................................40, 41

*McCoy v. Health Net, Inc.*,
569 F. Supp.2d 448 (D.N.J. 2008)..................................................................39

*McGee v. Continental Tire North America, Inc.*,
No. 06-6234, 2009 WL 539893 (D.N.J.  March 4, 2009) .............................48

*McKinnie v. J.P. Morgan Bank, N.A.*,
678 F. Supp.2d 806 (E.D. Wis. 2009) ...........................................................41

*Milliron v. T-Mobile USA, Inc.*,
423 F. App'x 131 (3d Cir. 2011) ................................................. 33, 36-37, 54

*Mims v. Arrow Financial Services, LLC*,
___ U.S., 132 S. Ct. 740, 181 L.Ed.2d 881 (Jan. 18, 2012).....................5, 45

ix

*Muchnick v. First Fed. Savings & Loan Associates,*
    No. 86-1104, 1986 WL 10791 (E.D. Pa. 1986)............................................58

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)...........................................................................29

*O'Keefe v. Mercedes-Benz USA, LLC,*
    214 F.R.D. 266 (E.D. Pa. 2003) ....................................................46

*Perry v. Fleetboston Financial Corp.,*
    229 F.R.D. 105 (E.D. Pa. 2005) ....................................................59

*Reibstein v. Rite Aid Corp.,*
    761 F. Supp. 2d 241 (E.D. Pa. 2011)............................................19

*Roberts v. Texaco, Inc.,*
    979 F.Supp. 185 (S.D.N.Y.1995) ..................................................58

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. July 29, 2011) ..............................50

*Spann v. AOL Time Warner, Inc.,*
    2005 WL 1330937 (S.D.N.Y. June 7, 2005)..................................50

*Station v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ........................................................39

*Stoetzner v. U.S. Steel Corp.,*
    897 F.2d 115 (3d Cir. 1990) ..........................................................19

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,*
    No. 03-4578, 2005 WL 1213926 (E.D. Pa.2005)..........................57

*Sullivan v. DB Investments, Inc.,*
    CIV.A. 04-2819 SRC, 2008 WL 8747721 (D.N.J. May 22, 2008)..............59

*Third Circuit Task Force Report, Selection of Class Counsel,*
    208 F.R.D. 340 (2002)...................................................................53

*Vandervort v. Balboa,*
    --- F. Supp.2d ___, 2014 WL1274049 (C.D. Cal. 2014)...............49

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) ................................................................. 50

*Walsh v. Great Atlantic & Pacific Tea Co.,*
    726 F.2d 956 (3d Cir. 1983) ..................................................................... 31

*Waters v. International Precious Metals Corp.,*
    190 F.3d 1291 (11th Cir.1999) ................................................................. 41

*Weiss v. Mercedes-Benz of North America, Inc.,*
    899 F. Supp. 1297 (D.N.J. 1995) *aff'd,*
    66 F.3d 314 (3d Cir. 1995) ............................................................ 19-20, 22

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970),
    *aff'd,* 440 F.2d 1079 (2d Cir. 1971) ......................................................... 22

*Williams v. MGM-Pathe Communications Co.,*
    129 F.3d 1026 (9th Cir. 1997) ................................................................. 40

W:\FIRMDOCS\04445\00150818.DOC

Plaintiff Nicholas Fitzgerald ("Plaintiff") submits this memorandum of law together with the declaration of Aytan Y. Bellin, Esq. (the "Bellin Decl."), the declaration of Nicholas Fitzgerald (the "Fitzgerald Decl.") the declaration of Jeffrey M. Eilender, Esq. (the "Eilender Decl.") the declaration of Steven Tlighman (the "Tlighman Decl.") and the declaration of Michael Protzel (the "Protzel Decl."), in support of its motion for an Order: (1) approving the Class Settlement; (2) approving the Class attorneys' application for fees, costs and expenses, and (3) approving an incentive award for Plaintiff.

## PRELIMINARY STATEMENT

This action was brought under The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("the TCPA") and the New Jersey Anti-Fax Statute, N.J.S.A. 56:8-158(a), which are remedial statutes that were passed to protect consumers from unwanted facsimiles that are a nuisance and an invasion of privacy. After successfully defeating Defendants' motion practice to dismiss this action, and defeating Defendants efforts to have this case determined on an individual basis in New Jersey State Court, Plaintiff and Defendants entered into settlement negotiations

Through extensive settlement negotiations including two full days of mediation led by a retired judge, the parties were able to reach a settlement that consists of a cash fund of $1,145,000.00 and non-cash benefits, consisting of

1

continuing legal education ("CLE") courses, valued at $1,881,290.00. Defendants are in the business of providing CLE courses and therefore targeted attorneys with their facsimiles. The settlement provides that in addition to cash benefits, class members may receive free CLE courses for three years after making a claim, which the class members who are attorneys would otherwise be required to pay for.

In terms of the settlement, whereas each statutory violation brings a penalty of $500, the settlement awards each Class member either $125 or $175 for each facsimile (depending on whether or not the facsimile was retained) up to a maximum of $875 in addition to a non-cash component of CLE courses worth $230. During settlement negotiations, Defendants produced financials indicating that they could not contribute any cash in addition to what their insurers were willing to offer. In turn, Defendants' insurers argued that they had good defenses to coverage. Had Plaintiff held out for a larger settlement, Defendants may have filed for bankruptcy and/or Plaintiff would have had to engage in a protracted lawsuit with Defendants' insurer with an uncertain result. The settlement that has been achieved affords class members a good award now. And as explained in detail below, the settlement meets all the requirements of Rule 23 of the Federal Rules of Civil Procedure and should be approved.

By its April 25, 2014 Order as modified by its May 6, 2014 Order, the Court

set a fairness hearing  for November 13, 2014 to approve the settlement, at which time Plaintiff's counsel will move this Court for an award of attorney's fees.  For the reasons explained below, Plaintiff's counsel merits a fee consisting of one-third (33 1/3%) of the total award, which is in line with fee awards in similar settlements and is typical of private fee arrangements in these types of cases. Achieving a satisfactory settlement was difficult for the reasons already mentioned.  All these issues were carefully and successfully negotiated by Plaintiff's counsel in order to achieve an excellent settlement for the class.

## STATEMENT OF THE CASE

**A.**    **PROCEDURAL HISTORY**

**1.**    **The State Court Action.**

Mr. Fitzgerald originally filed an action extremely similar to this one on behalf of himself and similarly situated class member in the Law Division of the Superior Court of New Jersey on May 26, 2011.  *Fitzgerald v. Gann Law Books, Inc.*, et al., Docket No. L-2832-11.  A few months later, on July 19, 2011, the New Jersey Appellate Division ruled that class actions could not be maintained in New Jersey State Court for TCPA cases. *See Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.*, 421 N.J. Super.268, 280-8 1, 23 A.3d 469, 476-77 (App. Div. 2011) (applying state class action rule, N.J. Ct. R. 4:32-1, to TCPA claim), *cert. denied*, 209 N.J. 96 (2011).

3

In response to that decision, on July 21, 2011, Plaintiff filed a Notice of Voluntary Dismissal pursuant to R. 4:37-1(a) and filed the instant action in this Court.  However, Defendants argued that Plaintiff's Notice of Voluntary Dismissal was untimely, and the parties were instructed to brief the issue.  The trial court eventually ruled that Plaintiff's dismissal was proper.  Defendants appealed that decision, which was affirmed by the Appellate Division.  *See Fitzgerald v. Gann Law Books, Inc.*, A-1447-11T4, 2013 WL 275886 (N.J. Super. Ct. App. Div. Jan. 25, 2013).  Defendants then sought to have this case certified for appeal to the New Jersey Supreme Court, which Plaintiff opposed.  The New Jersey Supreme Court denied leave to appeal.  *Fitzgerald v. Gann Law Books, Inc.*, 213 N.J. 537, 65 A.3d 262 (2013).

It was crucial for Plaintiff to prevail in this significant briefing in New Jersey Superior  Court, the Appellate Division and the New Jersey Supreme Court as Defendants were attempting to halt this lawsuit by arguing that the lawsuit there had been improperly dismissed and that therefore the instant action in federal court should be estopped.

### 2.    <u>The Federal Court Action.</u>

This action was commenced by filing of the Complaint on July 26, 2011. Defendants moved to dismiss the Complaint on September 23, 2011.  Defendants' Motion to Dismiss for Lack of Jurisdiction [Doc. No. 11].  On December 30, 2011,

District Judge Faith S. Hochberg administratively terminated that first motion to dismiss pending the outcome of two then pending cases: *Mims v. Arrow Financial Services, LLC*, ___ U.S. , 132 S. Ct. 740, 181 L.Ed.2d 881 (Jan. 18, 2012), and *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72 (3d Cir. 2011), *opinion reinstated in part*, 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

Defendants moved for an order staying this case pending the resolution of the above cases, which was granted by Order dated February 14, 2012. On July 27, 2012, following the resolution of the two above cases, Gann filed a second motion to dismiss. On March 22, 2013, Defendants made a second motion to stay the case.

By order and opinion filed on July 27, 2013, the Court denied Defendants' first motion to dismiss and denied Defendants' second motion to stay. Defendants' second motion to dismiss is still pending but has been mooted by the settlement. By order dated October 1, 2013, with the consent of the parties and consistent with Local Rule 301.1, the Court referred this case to mediation and appointed Judge Mariana Corodemus (Ret.) as mediator. After two full days of mediation, with the guidance of Judge Corodemus, the parties entered into a written memorandum of understanding settling this action. The parties subsequently negotiated a full settlement agreement and supporting documents, the substance of which is summarized below.

**B.**     **BACKGROUND AND SUMMARY OF THE SETTLEMENT**

On or about February 26, 2009, August 14, 2009, three separate times on August 15, 2009, and on April 8, 2011, Defendants Gann Law Books, Inc., Gann Legal Education Foundation, Inc. and Michael Protzel ("Defendants"), without Plaintiff's express invitation or permission, arranged for and/or caused a telephone facsimile machine, computer, or other device to send unsolicited fax advertisements (hereinafter "the fax advertisements"), advertising the commercial availability or quality of any property, goods, or services, to Plaintiff's fax machine located in his office in Jersey City, New Jersey. Complaint ("Compl."), ¶¶ 10-11, Ex. A.

The first fax advertisement referred to above contains a purported opt-out notice that states: "To avoid receiving notices such as this one in the future, send an email to optout@gannlaw.com. Please include your name and fax number." *See* Compl., ¶ 12, Ex. A. The next four of the fax advertisements referred to above contain a purported opt-out notice that states: "To avoid receiving notices such as this one in the future, send an email to optout@gannlaw.com.  Please include the name, email address and fax number of the person(s) wishing to opt-out." *See* Compl. ¶12, Ex. A.

The last of the fax advertisements referred to above does not contain any description whatsoever on how to opt-out of receiving fax advertisements from Defendants. *See* Compl.¶ 12, Ex. A.

These fax advertisements were part of an overall marketing plan in which Defendants, from July 26, 2007 through July 26, 2011, sent out or caused to be sent out tens of thousands of unsolicited and/or solicited fax advertisements, advertising the commercial availability or quality of any property, goods or services, to thousands of persons in multiple states. *See* Compl. ¶¶ 16-20. The opt-out notices, or the lack thereof, on the fax advertisements Defendants sent or caused to be sent to Plaintiff, were identical and/or substantially similar to those on the fax advertisements Defendants sent, from July 26, 2007 through July 26, 2011, to the thousands of persons from multiple states. *See* Compl. ¶¶ 17, 19. These opt-out notices, or the lack thereof, were defective under both the Telephone Consumer Protection Act, 47 U.S.C. § 227  ("the TCPA")  and the New Jersey Anti-Fax Statute, N.J.S.A. 56:8-158(a), and the sending of the fax advertisements to Plaintiff and thousands of others violated both statutes. *See, e.g.,* Compl. ¶¶ 13-14, 20, 52-57.

In fact, Howard V. Dubner, the Vice-President of Gann Law Books, Inc. and a Trustee of Gann Legal Education Foundation, has already admitted that, from February 24, 2009 through February 27, 2009, Gann faxed copies of the "Hot

Topics in New Jersey Appellate Practice" fax advertisement —that Gann faxed to Plaintiff —to 3,349 persons inside of New Jersey and 461 persons outside of New Jersey. *See* Declaration of Howard V. Dubner dated September 23, 2011 ¶ 12.[1] Dubner has also admitted that from August 11, 2009 through August 18, 2009, Gann faxed copies of the "Autumn 2009 Seminars" fax advertisement — that Gann faxed to Plaintiff — to 4,260 persons inside of New Jersey and 627 persons outside of New Jersey. Bellin Decl., Ex. 1, ¶¶ 13-14. Finally, Dubner has admitted that in April, 2011, Gann faxed copies of the "Damages in Personal Injury Actions – How Big is Your Case?" fax advertisement—that Gann faxed to Plaintiff —to 8,260 persons inside of New Jersey and 90 persons outside of New Jersey. *See* Declaration of Howard V. Dubner dated October 11, 2011 ¶¶ 3-5 attached as Exhibit 2 to the Bellin Decl.. Attached to Dubner's declarations are telephone bills that list telephone numbers to which Defendant sent the fax advertisements, although Defendants have blocked out all of the individual telephone numbers other than their area codes.

Accordingly, Plaintiff brought this action on behalf of himself and three classes defined as follows:

---

[1] This declaration was attached as Exhibit 1 to the March 12, 2014 Declaration of Aytan Y. Bellin submitted in support of Plaintiff's motion for preliminary approval of the class action settlement, ("Bellin Decl.") Ex. 1.

**Class A**: All persons in the United States from July 26, 2007 through July 26, 2011 to whom Defendants sent or caused to be sent, by facsimile, computer or other device, an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which contained purported opt-out notices, substantially similar or identical to those contained on the fax advertisements sent to Plaintiff that are attached hereto as Exhibit A to the Complaint or did not contain an opt-out notice at all.

**Settlement Class B**: All persons in the United States from July 26, 2007 through July 26, 2011 to whom Defendants sent or caused to be sent an unsolicited and/or solicited facsimile advertisement, by facsimile, computer or other device, advertising the commercial availability or quality of any property, goods, or services, which contained purported opt-out notices, substantially similar or identical to those contained on the fax advertisements sent to Plaintiff that are attached as Exhibit A to the Complaint or did not contain an opt-out notice at all.

**Class C**: All persons in the State of New Jersey from July 26, 2007 through July 26, 2011 to whom Defendants, from the state of New Jersey, sent or caused to be sent, by facsimile, computer or other device, an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which contained purported opt-out notices, substantially similar or identical to those contained on the fax advertisements sent to Plaintiff that are attached as Exhibit A to the Complaint or did not contain an opt-out notice at all.

The Complaint seeks statutory damages of from over 5 million to over 15 million dollars for each of classes A and B, statutory damages, attorney's fees and costs for Class C, and injunctive relief for all of the Classes. Compl., Prayer for Relief ¶¶ B, C, D, E.  The proposed settlement class is defined as all persons in the United States who, during the Class Period were owners of facsimile numbers to which were sent or caused to be sent one or more facsimile advertisements by

9

Defendants Gann Law Books, Inc. and/or Gann Legal Education Foundation, Inc., their officers, directors, employees, agents, vendors, or contractors.

After Plaintiff's counsel successfully defeated Defendants' first motion to dismiss and defeated Defendants' effort to have this case decided on an individual basis in New Jersey state court, and while Defendant's second motion to dismiss was pending, the parties were referred to mediation.   After arm's length negotiations, the parties entered into a settlement agreement which was preliminarily approved by the Court in its April 25, 2014 order. That Order conditionally certified the following Settlement Class:

> All persons in the United States who, during the period of July 26, 2007 through July 26, 2011 were owners of facsimile numbers to which were sent or caused to be sent one or more facsimile advertisements by Defendants Gann Law Books, Inc. and/or Gann Legal Education Foundation, Inc., their officers, directors, employees, agents, vendors, or contractors.

The settlement provides the class members with a cash payment of $175 for each facsimile received if the class member has retained an actual copy of the facsimile, subject to a maximum of $875 for five or more submitted facsimiles.  If the class member no longer has an actual copy of the facsimile (which may have been sent years ago) but provides an affidavit or declaration stating that the Claimant owned the relevant facsimile number at the time the Claimant received the facsimile, that class member will receive a cash payment of $125.  In addition, each class member who submits a valid claim will receive one ethics webinar of

4.5 MCLE credits, valued at $140.00 and one ethics webinar of 2.5 MCLE credits, valued at $90.00.  If there is money left over from the distribution to those Class members who made claims, then pursuant to Paragraphs 8(iii) and 10(c) of the Settlement Agreement, persons who have not even submitted a claim but whose facsimile numbers the Defendants have dialed will also get a cash benefit assuming that the cost of administering that distribution is no greater than the amount of the cash benefits to be delivered.

## C.   RESPONSE FROM THE CLASS.

Defendants in this action attempted to fax notices of the class action settlement to the 8,181 Settlement Class members who have previously received facsimiles at issue.  Protzel Decl. ¶¶ 2-4.  Out of those, Defendants successfully transmitted short-form class notice to 6,295 Settlement Class members.  *Id.* ¶ 5.  Defendants provided the Class Administrator with a list of 1,813 persons to whom they attempted to send facsimiles but did not receive confirmation that the facsimiles were received.  Defendants provided mailing addresses for 1808 out of the 1,813 members on that list.  Tlighman Decl. ¶ 2.  The Claims Administrator then sent short-form class notice to the 1,807 addresses.   *Id.* Of these, 421 were returned by the U.S. Postal Service, though the Claims Administrator was able to find current addresses and successfully mail 14 of these 421 class members.  *Id.* In

addition, the Claims Administrator mailed notices and claims forms to an additional 36 persons who contacted it to request them. *Id.*

The April 25, 2014 Order of this Court set a deadline of October 23, 2014 to file an objection to the preliminary class settlement or opt out of the class. To date, the Claims Administrator has not received any objections and has received one opt-out request. *Id.* ¶ 3.

The deadline for submitting a claim was August 14, 2014. The Claims Administrator received 290 valid claims forms by members of the class. *Id.* ¶ 5. The below chart, compiled by the Claims Administrator, summarizes that there were 284 claims by those who did  not have a copy of the facsimile(s) they received ("Undocumented Faxes) which will potentially pay out $42,125.00 and 19 claims by those with copies of the facsimiles which will potentially pay out $11,550.00. *Id.* Thus, without taking into account any pro rata distribution as mentioned in paragraph 10(e) of the Settlement Agreement, the total amount that may be paid in cash to the class members is $53,675.00. *Id.*

| Undocumented Faxes | Claims | Per Fax Line | Total |
|---|---|---|---|
| Claimed 1 fax | 242 | $ 125 | $30,250.00 |
| Claimed 2 faxes | 34 | $ 250 | $8,500.00 |
| Claimed 3 faxes | 5 | $ 375 | $1,875.00 |
| Claimed 4 faxes | 3 | $ 500 | $1,500.00 |
| Claimed 5 faxes | 0 | $ 625 | ----- |

|  |  |  |  |
|---|---|---|---|
| **Totals** | 284 |  | $42,125.00 |

| Documented Faxes | Claims | Per Doc. Fax | Total |
|---|---|---|---|
| Claimed 1 fax | 3 | $ 175 | $525.00 |
| Claimed 2 faxes | 4 | $ 350 | $1,400.00 |
| Claimed 3 faxes | 2 | $ 525 | $1,050.00 |
| Claimed 4 faxes | 1 | $ 700 | $700.00 |
| Claimed 5 faxes | 9 | $ 875 | $7,875.00 |
| **Totals** | 19 |  | $11,550.00 |

In addition, there were 216 valid claims for MCLE, which equals a total value of $49,680.00 according to paragraph 2(a) of the Settlement Agreement. *Id.* ¶ 6.

The total amount that will be paid in cash to the Claims Members cannot be determined at this time. Paragraph 2(b) of the Settlement Agreement provides:

> (b) Cash Fund. In addition to the MCLE programs described in Paragraph 2(a), Defendants agree to pay an amount of $1,145,000 for (i) attorney's fees, costs and reimbursement of expenses to Class Counsel as determined by the Court, (ii) the payment of Valid Claims by members of the Settlement Class, (iii) any Incentive Award to the Class Representative (as defined in Paragraph 12), and (iv) administrative costs as set forth in Paragraph 6(c). In no event will Defendants be required to pay more than $1,145,000 in cash in connection with this Agreement and Settlement.

13

Thus, it remains to be determined how much will remain in the Cash Fund after the above costs and awards are decided.  The instant motion seeks attorney's fees of $1,008,763.33, plus an incentive fee for Fitzgerald of $5,000 for a total of $1,013,763.33, which leaves $131,236.67 in the Cash Fund.  Should there be enough remaining in the Cash Fund after the above costs are deducted, the rest will be distributed on a pro rata basis to the class members, including those who did not make claims but for whom the Claims Administrator has valid addresses, provided that the cost of this distribution is not more than the amount to be distributed.  *See* Settlement Agreement ¶ 10(e).[2]

## **ARGUMENT**

### I.   **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

#### A.   **Standard of Review.**

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch.*

---

[2] As mentioned in the Bellin Decl. at ¶12, the Claims Administrator received 21 claims forms that it found to be incomplete or ambiguous so as not to be a valid claim.  Pursuant to the terms of the Settlement Agreement, the parties' counsel are to meet and confer to determine which of these are valid or otherwise require additional information from a claimant.  Plaintiff anticipates providing an update to the Court as to the status of these claims prior to the fairness hearing.

*Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of ... 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1998)).

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). In deciding whether to approve a settlement, the Third Circuit has a strong judicial policy that encourages class settlements especially those that are the product of arm's-length negotiations. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); see also *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of....'settlement classes' as a means to facilitate the settlement of complex nationwide class actions") (quotation and citation omitted); *GM Trucks*, 55 F.3d at 784 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). Accordingly, in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned. Fed. R. Civ. P. 23(e); *Warfarin Sodium*, 391 F.3d at 534. "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing" Manual For Complex Litigation (Second), § 30.44 (1985). As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval. Therefore, the Court should allow notice of the settlement to be disseminated to the Class.

### B.    The *Girsh* Factors.

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." The elements of this test - known as the "*Girsh* factors" - are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks,* 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

### 1.   Complexity, Expense, And Likely Duration Of The Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks,* 55 F.3d at 812

This factor undoubtedly weighs in favor of settlement. In *Warfarin Sodium,* the parties had already litigated the case for three years. 391 F.3d at 537 Nevertheless, the court concluded that the first *Girsh* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial. Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class. In a class action of this magnitude, which seeks to provide recovery for Coumadin consumers and TPPs [third party payers] nationwide, the time and expense leading up to trial would have been significant.

*Id.* at 536.

In this litigation, the path from this pre-discovery stage of the litigation to a final judgment would likely be long and expensive.   The settlement permits resolution at a relatively early stage of this litigation, thereby permitting the Court and the parties to avoid significant expenditures of time and resources. If the settlement is not given final approval, time-consuming and expensive discovery and motion practice would become necessary.   After discovery relating to class certification, the parties would be forced to brief class certification (since Defendants explicitly reserved their rights to contest class certification if the settlement was not ultimately approved), and the Court would have been forced to decide the strongly contested issue of whether a basis exists to certify a class for the purpose of establishing liability. If the Court had determined that certification was warranted, then Defendants presumably would have immediately exercised its right to interlocutory review of that certification order. If the certification order was upheld, additional discovery would have been taken (with attendant discovery-related motion practice). Thereafter, dispositive motions would have been filed by one or more of the parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice in the event that such dispositive motions resulted in either entry of final judgment or a basis for interlocutory review. Depending on how the Third Circuit resolved any such appeals, the case

18

might ultimately have gone to trial. Post-trial motions and additional appeals would have likely followed.

In short, litigating this action would have proved lengthy, complex and expensive, thereby delaying (and potentially dissipating) any benefits that might have been obtainable by the class members. By resolving the action at this relatively early stage, the settlement class members are in position to receive immediate concrete benefits. In short, this factor strongly favors granting final approval of the settlement.

### 2.    The Reaction Of The Class To The Settlement.

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential,* 148 F.3d at 318.   As noted in the accompanying declaration by the Claims Administrator, there have been no objections to the settlement and only one opt-out.  Tlighman Decl. ¶ 3.  Given that there has been only one opt-out and no objections from the approximately 7,769 members who received notice, the reaction of the class to the settlement is evidence that it should be finally approved.  *See Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 252 (E.D. Pa. 2011) ("The fact that the settlement is entirely uncontested is considered evidence of its fairness."); *Cendant Corp.,* 264 F.3d at 234-35 ("[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong

presumption that this factor weighs in favor of the Settlement"); *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993) (holding that small proportion of objectors constituted tacit consent to settlement); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990) (finding only twenty-nine objectors from 281-member class "strongly favors settlement"); *Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1301 (D.N.J. 1995) *aff'd,* 66 F.3d 314 (3d Cir. 1995) (holding that "substantial silent consent weighs in favor of certification" where approximately 100 out of 30,000 class members objected or opted out of the class).

### 3.    The Stage Of Proceedings And The Amount Of Discovery Completed.

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *GM Trucks,* 55 F.3d at 813; *accord Cendant,* 264 F.3d at 235.

This inquiry has two aspects: legal and factual. *Prudentia,* 148 F.3d at 319. The first aspect is easily satisfied in this case, where the parties engaged in extensive negotiations and related legal analyses with the help of mediator Judge Corodemus, and have significant experience in this type of case. As a result, Class Counsel has a more than adequate appreciation of the legal merits of the case.

The same is true from a factual perspective, which involves "an inquiry into the type and amount of discovery the parties have undertaken." *Id.* at 319. The

discovery considered by the court includes "informal" discovery received from the defendant, third-parties and experts. *See, e.g., GM Trucks,* 55 F.3d at 813 (expert testimony and other evidence from parallel state court proceedings) (internal citations omitted); *Prudential,* 148 F.3d at 319 (witness interviews); *Cendant,* 264 F.3d at 235 (public filings); *Warfarin Sodium,* 391 F.3d at 537 (consultation with experts).

Discovery was stayed in this case pursuant to this Court's Order, dated February 14, 2012 [Doc. No. 34].  By order dated July 29, 2013, this Court denied Defendants' first motion to dismiss.  Although this case has not gone to discovery, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quotation and citation omitted); *see also In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir.1982). Rather, the dispositive question is whether plaintiffs had sufficient information to make an informed decision about the settlement. *See In re Mego*, 213 F.3d at 459. Here, Plaintiff's counsel has conducted significant investigation of the class claims including through extensive through informal information sharing with opposing counsel.

As explained above, Plaintiff's counsel has a thorough appreciation of the facts - good and bad - which bear upon the merits of the claims in this litigation.  In

view of the foregoing, this factor strongly favors approval of the proposed Settlement.

## 4/5.   Risks of Establishing Liability and Damages.

These two factors are often considered together.  As to the fourth factor: "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 814. "The risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of North America*, 899 F.Supp. 1297, 1301 (D.N.J. 1995); *See also, e.g., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.")

As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant,* 264 F.3d at 238-39 (internal citation and quotation marks omitted). The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential,* 148 F.3d at 319.

If this action proceeds, based on their experience with other TCPA actions and the specifics of this action, Plaintiff's counsel expects that Defendants will aggressively litigate the issues of: (1) whether each individual fax recipient had specifically authorized the transmission or had an established business relationship

with Defendants; (2) whether each individual fax communication complied with the opt-out notice requirements of the TCPA; and (3) whether each individual fax transmission qualified as an advertisement for the purposes of the TCPA. Plaintiff's counsel also expects that Defendants would vigorously oppose class certification if the settlement is not approved as Defendants explicitly reserved their rights to contest class certification in the Settlement Agreement should that Agreement not be finally approved by the Court.

And, even if a class is certified and the class members succeed in establishing that Defendants violated the TCPA, they will not be able to collect the maximum statutory damages of $1,500 per violative fax unless they can establish that Defendants "willfully or knowingly" violated the TCPA. *See* 47 U.S.C. § 227(b)(3). The issue of whether Defendants' violations (if any) were willful or knowing is also likely to be aggressively litigated by Defendants.

While Plaintiff was confident that it would ultimately succeed on its claims, it was also aware that this action would continue to be heavily litigated by experienced class action counsel on behalf of Defendants.  As with any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiff was able to obtain by settlement much of the relief it was seeking in the litigation, it is in the Class's best interest to accept the relief provided in the settlement rather than

to spend hundreds of thousands, if not millions, of dollars in fees and years of time in an attempt to obtain a marginally better result through litigation.

### 6.   Risks of Maintaining Class Action Status through Trial.

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GM Trucks,* 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh,* 521 F.2d at 157. While, for the reasons stated above, Plaintiff firmly believes that this case is appropriate for class action treatment and, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class.   For example, manageability is not a concern with settlement classes. *Amchen,* 521 U.S. at 620; *Cmty. Bank,* 418 F.3d at 309

What is certain is that any decision granting certification on any issues as to any class or subclass would be subjected to the cost, delay, and the uncertainty of Rule 23(f) appellate challenge, before the class could proceed to trial; and an appeal from any verdict or judgment in favor of the class would likewise follow.

If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive (to chase a $500 award for each statutory violation) to pursue claims on their own behalf, with the

practical result of no recovery by anyone. *See Carnegie v. Household International, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). The Settlement provides a remedy now to all Class members, rather than risking an uncertain result after years of expensive litigation.

### 7.   Ability To Withstand Greater Judgment.

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement" *Cendant,* 264 F.3d at 240 (describing the holding in *Prudential,* 148 F. 3d at 321-22). Defendants here are not large corporations with infinite resources. Through negotiations, Plaintiff has come to believe that Defendants could not withstand a judgment far greater than the settlement.

Assuming arguendo that Plaintiff would prevail at trial and would seek the maximal amount on damages, Plaintiff's Counsel believes through extensive negotiations, including information as to Defendant's financials which Defendants provided, that Defendants do not have the financial resources to satisfy a damages award that is significantly greater than what has been realized through settlement. Bellin Decl. ¶ 6;  Eilender Decl. ¶  8. In a similar situation in a class action TCPA, the court in *Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL

216522, at *6 (N.D. Cal. Jan. 24, 2012) noted that defendant's insurance policy of $1,000,000 was the only possible source of funds from which plaintiff could recover cut in favor of approving the settlement as the Defendant lacked the resources to contribute to a settlement fund: "[Defendant] will be unable to provide the full compensation for these statutory violations whether the parties settle now or move on to further litigation. The offer before the court is the best offer the plaintiffs will get."  The same holds true here, and thus this factor weighs in favor of approval.

> **8/9.** **The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation.**

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential,* 148 F.3d at 322; *see also Warfarin Sodium,* 391 F.3d at 538 (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case"). As Judge Becker explained in *GM Trucks,* "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806.

In making its Rule 23(e) determination, the Court should apply "an initial presumption of fairness when . . . . (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class object[s]." *Warfarin Sodium II,* 391 F.3d at 535 (quoting *Cendant,* 264 F.3d at 232 n.18). With respect to the last factor, to date no objections to the Settlement have been received by the Claims Administrator. Tlighman Decl. ¶ 3. Thus an initial presumption of fairness applies to the proposed Settlement, particularly, since, as is explained above, the settlement amount is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial.

In view of the uncertainties and certain delays in litigating this case, it is in the Class members' best interests to avail themselves of a concrete settlement today. It is notable that Class members can participate in the benefits of this settlement regardless of whether that class member actually retained copies of the facsimile allegedly to have violated the TCPA.

The contemplated settlement provides the class members with a cash payment of $175 for each facsimile received if the class member has retained an actual copy of the facsimile, subject to a maximum of $875 for five or more submitted facsimiles. If the class member no longer has an actual copy of the

facsimile but provides an affidavit or declaration stating that the Claimant owned the relevant facsimile number at the time the Claimant received the facsimile, that class member will receive a cash payment of $125.  This is undeniably an excellent result, because it is likely that many Claimants no longer retain facsimiles which may have been sent years ago.  In addition, each class member will receive one ethics webinar of 4.5 MCLE credits, valued at $140.00 and one ethics webinar of 2.5 MCLE credits, valued at $90.00.

Under the TCPA, the maximum recovery for receipt of a fax in violation of that statute, prior to trebling, is $500.  Trebling only occurs if it is found that Defendants' conduct was knowing or willful, which is a difficult burden to meet, involving questions as to state of mind and intentionality.

In light of the risks attendant to all litigation, and Defendants' expressed intent to vigorously contest the allegations in this Litigation, the cash payments ranging from $125-875 in addition to MCLE programs worth $230.00  provided for in the Settlement Agreement are in the best interests of the class members.

### C.    The Parties Comprehensive Notice Plan Reached A Large Percentage Of The Class And Satisfies Rule 23 And Due Process.

Notice of a proposed settlement must be given to class members in the most practicable manner under the circumstances, describing the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *See* Fed. R. Civ. P. 23(c)(2)(B). As the Supreme Court

explained in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314

(1950):

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably
> calculated, under all the circumstances, to apprise interested parties of
> the pendency of the action and afford them an opportunity to present
> their objections ... The notice must be of such nature as reasonably to
> convey the required information, and it must afford a reasonable time
> for those interested to make their appearance.

(internal citations omitted). The manner in which notice was distributed in this case

more than satisfies this standard.

Under Rule 23(c)(2)(B), "the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." Here, the Notice was

be sent by way of facsimile to Settlement Class members, approximately 8,181 in

number, using those unique 8,181 facsimile numbers shown in the records of

Defendants.   Protzel Decl. ¶¶ 2-4.  If a facsimile transmission was not successful,

Defendants made one more attempt to resend via facsimile to that same facsimile

number.  *Id.* ¶ 5.   Defendants received 6,295 confirmations that the facsimile

transactions were completed.  *Id.*   In the event that the Summary Notice could not

be transmitted to a given facsimile number after Defendants have tried twice to do

so, Defendants made a reasonable effort to determine whether their records contain

a mailing address associated with such facsimile number.    If Defendants

determined that they possessed such a mailing address, they provided such address to the Claims Administrator.  Defendants provided the Claims Administrator with a list of 1,813 names including mailing addresses for all but five names on the list. Claims Administrator then sent short-form class notice to the 1,808 addresses.   Of these, 421 were returned by the U.S. Postal Service, though the Claims Administrator was able to find current addresses and successfully mail 14 of these 421 class members.   Thus, approximately 7,696 of the 8,181 Class Members received Notice of the settlement, which is almost 94% of the Class.

The form of the class Notice which was sent was governed by Rule 23(c)(2), which provides that [t]he notice must clearly and concisely state in plain, easily understood language:

(i)    the nature of the action;

(ii)   the definition of the class certified;

(iii)  the class claims, issues, or defenses;

(iv)   that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)   the time and manner for requesting exclusion; and

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The notices in this case met all of these requirements.

### D.   The Plan Of Allocation Is Fair And Reasonable.

Because "a class action settlement cannot arbitrarily prefer one group of plaintiffs over another," *In re Diet Drugs Prods. Liab. Litig.,* 93 F. App'x 338, 343 (3d Cir. 2004), the Court must ensure "that the fund distribution is fair and reasonable as to all participants." *Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956, 964 (3d Cir. 1983). "Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other." Herr, *Manual for Complex Litigation* (Fourth) § 2162, at 315 (Fed. Jud. Ctr. 2004).

Examining this question, courts have accorded substantial deference to the opinions of experienced counsel who are well-versed in dealing with these issues. *See, e.g., Aramburu v. Healthcare Fin. Serv., Inc.,* No. 02-CV-6535 (MDG), 2009 WL 1086938, at *5 (E.D.N.Y. Apr. 22, 2009) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel."); *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* Master File Nos. 05 Civ. 10240(CM), 05 CV 10287, 05 CV 10515, 05 CV 10610, 06 CV 00304, 06 CV 00347, 06 CV, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (same); *In re Bayer AG Sec. Litig.,* No. 03 Civ. 1546(WHP), 2008 WL 5336691, at *3 (S.D.N.Y. Dec. 15, 2008) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."); *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006); *In re*

*Charter Comm'ns., Inc., Sec. Litig.,* No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) (same).

Here, the proposed settlement agreement has established comprehensive cash and non-cash relief in the form of MCLE courses that provides Class members with valuable cash and non-cash relief.  In addition, as mentioned above, even if a Class member no longer has a copy of the allegedly violative facsimile, that Class member can still receive cash and MCLE courses upon presentation of an affidavit or declaration setting forth sufficient facts to indicate that they are entitled to relief, which is a far more generous result than would likely occur if the case went to trial.  If there is money left over from the distribution to those Class members who made claims, then pursuant to Paragraphs 8(iii) and 10(c) of the Settlement Agreement, persons who have not even submitted a claim but whose facsimile numbers the Defendants have dialed will also get a cash benefit.

This allocation is clearly fair and reasonable.

## II.   THE REQUESTED ATTORNEY'S FEE AWARD IS FAIR AND REASONABLE.

Plaintiff requests an award of attorney's fees of one-third of the total Settlement of $3,026,290.00, or $1,008,763.33. This request is well within the legal bounds given the nature of this case and the result.  Crosschecking this fee request against the lodestar fee calculation validates its reasonableness.

The awarding of fees is within the district court's discretion. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). However, the court must clearly articulate the reasons supporting its conclusion. *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). To determine the appropriate amount of attorneys' fees, courts in this Circuit have discretion to apply either the percentage-of-recovery method or the lodestar method. *See In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("The percentage-of-recovery method applies a certain percentage to the settlement fund," while "[t]he lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services."); *see also Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011). "Commentators discussing fee awards have noted that 'one purpose of the percentage method' of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—'is to encourage early settlements by not penalizing efficient counsel'..." . *Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citing Manual for Complex Litigation, § 24.121, at 207, citing 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 14.03, at 14-3 to 14-7 (3d ed. 1992)).

Operating as an exception to the American Rule, the common fund doctrine "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled

to recover from the fund the costs of his litigation, including attorneys' fees." *In re Diet Drugs,* 582 F.3d at 540 (citing *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 187 (3d Cir. 2005)) (internal quotations and citations omitted). The percentage-of-recovery method has long been preferred in the Third Circuit in common-fund cases. *See, e.g., Gunter,* 223 F.3d at 195 n. 1; *Brytus v. Spang & Co.,* 203 F.3d 238, 243 (3d Cir. 2000); *In re GM Trucks,* 55 F.3d at 821; *In re Prudential,* 148 F.3d at 333-34 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotations and citations omitted).   In this case, because the Class Representative and Class Counsel have secured and made available a $3,026,290.00 common fund ($1,145,000 in cash and $1,881,290 in free CLE) for the benefit of the Class, the percentage-of-recovery method should be used to determine the reasonableness of the agreed-upon fees.

The standard for evaluating fee awards is reasonableness.   *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In common fund cases of the type presented here-where attorneys' fees and the Class recovery come from the same source and the fees are based on a percentage of the Class settlement-the Third Circuit has set forth a multi-factor analysis to help analyze whether or not the percentage award is

reasonable. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000). Commonly called the *Gunter* factors, these factors include:

> (1) the size of the fund created and the number of persons benefited;
>
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
>
> (3) the skill and efficiency of the attorneys involved;
>
> (4) the complexity and duration of the litigation;
>
> (5) the risk of nonpayment;
>
> (6) the amount of time devoted to the case by plaintiffs' counsel; and
>
> (7) the awards in similar cases.

*Id.; see also In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). These factors are not intended to be exhaustive. Among other factors that a Court may consider are:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;
>
> (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and
>
> (3) any "innovative" terms of settlement.

*AT & T,* 455 F.3d at 165-166 (citing *In re Prudential,* 148 F.3d at 338). The above-referenced factors should not be applied in a formulaic way; rather, the district court should "engage in robust assessments of the fee award reasonableness factors

36

recognizing an especially acute need for judicial scrutiny of fee arrangements in class action settlements." *AT & T,* 455 F.3d at 166 (citations and quotations omitted); *see also Gunter,* 223 F.3d at 195 n. 1 (finding that "factors listed need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest"). Finally, the Third Circuit requires that a district court cross-check the percentage-of-recovery calculation against the lodestar method to ensure that the percentage-of-recovery method has yielded a reasonable number. *AT & T,* 455 F.3d at 164.

As courts have noted, so-called *Girsch* factors (after *Girsch v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) used to determine whether a class action settlement is fair, reasonable and accurate, which were discussed earlier in Plaintiff's motion for preliminary approval of the class settlement are similar to, and overlap with, several of the *Gunter* factors analyzed here. *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184 (CCC) ---F.R.D.----, 2013 WL 3956378, at *17 (D.N.J. Aug. 1, 2013) ("The Court finds that the totality of the *Gunter* factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's analysis of the *Girsh* factors. Given the similarity and overlap of the *Gunter* and *Girsh* factors, the Court incorporates by reference the reasons cited above under the *Girsh* test for approval of the Settlement Agreement.") *accord Milliron v. T-Mobile USA, Inc.*,

CIV.A. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009) *aff'd,* 423 F. App'x 131 (3d Cir. 2011).

### A.    A One-Third Fee Award of the Common Fund is Fair and Reasonable.

#### 1.    A One-Third Award Is Reasonable Based On The Size Of The Fund.

The first *Gunter* factor analyzes the size of the fund created and the number of persons benefited. *Gunter,* 223 F.3d at 195. n .1. Generally speaking, there is an inverse relationship between an increase in the size of the settlement fund and the percentage fee award. *In re Prudential,* 148 F.3d at 339. This case, however, involves only a cash fund of $1,145,000.00 million and non-cash benefits valued at $1,881,290.00 million. While this is a significant amount given the claims asserted and the risks of establishing liability, the net recovery is not so large as to implicate the "inverse relationship" called for by a "very large" settlement. *See In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 195 (E.D. Pa. 2000) (finding that $100 million is the informal marker constituting a "very large" settlement and collecting cases).

Although there is a non-cash component of $1,881,290.00 million that consists of MCLE programs offered by Defendants, for the purposes of determining the total value of the settlement this non-cash component should be valued at par value.  Unlike "coupon" settlements, which are often greeted with

justifiable suspicion by courts and commentators — since these coupons have little intrinsic value and are unlikely to ever be used by class members — here the MCLE programs are of very real benefit to the Class.

Defendants are in the business of offering CLE programs and thus their facsimiles were targeted at the lawyers and law firms who comprise the Class. Nearly all the facsimiles were sent to persons in New Jersey, with the rest mainly going to New York and Pennsylvania.  *See* pp. 7-8, referring to Declaration of Howard V. Dubner,  Bellin Decl., Exs. 1 and 2, which are records of the facsimile numbers used, including the state of where the recipient facsimile is located.   As the Court is well aware, CLE is mandatory (*see*, *e.g.*, New Jersey Rule 1:42 Continuing Legal Education; 22 NYCRR 1500.1 *et seq.*, rules for mandatory CLE in New York State; and  Pa. R. C.L.E. 101 *et seq.*, Pennsylvania CLE rules) for all active lawyers. Here, the MCLE programs are redeemable over a three-year period, meaning that even if a Class member has satisfied his or her CLE requirements in the current two-year reporting period, that lawyer will be able to take advantage of the CLE in the next one.  Given that Class members would otherwise have to pay for CLE classes, these non-monetary benefits are of very real value to the Class. Though not all claimants have requested MCLE credits, they could have easily done so if they wished.

Case law is clear that where the non-monetary benefit provided to the class is real, it should be given a monetary value for the purposes of calculating the total settlement value and the appropriate percentage of recovery for attorney's fees. *See McCoy v. Health Net, Inc.*, 569 F. Supp.2d 448, 478 (D.N.J. 2008); *Station v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Accordingly, the total dollar value of this settlement to the class is $3,026,290.

The Settlement Agreement established a Cash Fund of $1,145,000 to pay for claims by Class Members, attorney's fee, an incentive award to the Class Representative and administrative costs. Settlement Agreement ¶ 2(b). If the Court grants our motion for attorney's fees of $1,008,763.33, plus an incentive fee for Fitzgerald of $5,000 for a total of $1,013,763.33, this will leave $131,236.67 in the Cash Fund. With the deadline for making claims elapsing on August 14, 2014, the cash claims that have been made total $53,425.00. *See supra*, at 10-12 and Tlighman Dec. ¶ 5. This means that if our motion is granted, there will be enough to pay all the known claims and then some. Once all payments have been made to both those who documented and undocumented claimants, the remaining money will be distributed on a pro rata basis "provided, however, that the amount to be distributed per Claimant is more than the cost of administration." Settlement Agreement ¶ 10(e).) If the cost of administration exceeds the amount due each

claimant, the remainder will be distributed to a charitable organization per Court order. *Id.*

That the total cash claims currently equals $53,425.00 as compared to the Cash Fund of $1,145,000.00   and that not all Class Members have requested MCLE should not affect the total amount of attorney's fees awarded in this case, which should be based on the size of the total fund created as opposed to the amount actually claimed.  In class actions that result in a common fund, and  "the entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. . . .and [a]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir. 2007). *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-480 (1980) (attorney's fee in common fund case should be calculated based on the entire common fund, including the portion of that fund unclaimed by class members); *Alleyne v. Time Moving and Storage, Inc.* 264 F.R.D. 41, 59 (E.D.N.Y. 2010) (same). This is true even when the fees requested by Class Counsel exceed the amounts claimed from the available common fund by class members. *See, e.g., Williams v. MGM-Pathe Commun. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million) (cited

41

with approval in *Masters*, 473 F.3d at 437); *accord Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295 (11th Cir.1999) ("'In *Boeing Co. v. Van Gemert,* the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.'") (quoting Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14.03, at 14–14 (3d ed.1992)); *see also McKinnie v. J.P. Morgan Bank, N.A.*, 678 F. Supp.2d 806, 814-815 (E.D. Wis. 2009) (approving attorney's fees award of $625,000 out of $2.1 million fund when class members only claimed $187,000).

In *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013), the Third Circuit approved calculating an award of attorney's fees based on the entire common fund including amounts that were not distributed to the class but were distributed *cy pres*.   The Third Circuit noted that with respect to using the entire settlement fund as the appropriate benchmark that "[c]ourts of appeals have taken a similar approach when they have addressed this issue in the *cy pres* context," citing *Masters*, *supra*, 473 F.3d 423, with approval.

## 2.   Class Member Objections.

The Class Administrator has confirmed that there are no objectors.   See Tligham Dec. at ¶ 3.   Only one class member has filed an opt-out notice.   *Id.*   This

factor weighs in favor of the application for attorney's fees as the case law cited *supra*, at pp. 19-20, indicates.

### 3.    Class Counsel Handled This Action In A Skilled And Effective Manner.

Plaintiff's attorneys are experienced litigators who are well versed in this type of action and have effectively litigated this case.   Plaintiff's counsel successfully defeated Defendants' attempts to dispose of this case through repeated motions to dismiss and negotiated a settlement that achieves a significant amount of what was originally sought in the Complaint.

Attorney Bellin has discussed the case with Plaintiff, researched possible claims by Plaintiff and the Class, drafted the Complaint, drafted numerous memoranda of law and letters in response to multiple motions to dismiss and to stay and was among the drafters of this motion. Bellin Decl. ¶¶ 4-5. Attorneys Bellin and Eilender have consulted with one another regarding strategy in this case, Attorney Eilender's firm was significantly involved in drafting the opposition to Defendants' First Motion to Dismiss, and Attorney Eilender participated in a settlement conference with Defendants' counsel along with Attorney Bellin and then the mediation that was ultimately successful.  Bellin Decl. ¶ 5; Eilender Decl. ¶ 7.  Plaintiff's counsel reached a settlement which was preliminarily approved by this Court without opposition.  Bellin Decl. ¶ 5; Eilender Decl. ¶ 7.

The manner in which Plaintiff's counsel "conducted all aspects of this litigation, including the very successful settlement negotiations," exemplifies their "significant skill" and "expertise." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL NO 1426, 2008 WL 63269, at *4 (E.D. Pa. Jan. 3, 2008); *see also, In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) *amended,* MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ("[t]he [settlement] result achieved is the clearest reflection of [Class Counsel's] skill and expertise."); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc*., 6 F. Supp. 2d 313, 323 (D.N.J. 1998) ("The most significant factor in this case is the quality of representation, as measured by the quality of results achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel").  Defense counsel proved to be a tenacious opponent and settlement would have been impossible without Class Counsel's experience, ability and professionalism. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig*., 263 F.R.D. 226, 244 (E.D. Pa. 2009) (court granted class counsel's fee request where plaintiffs' counsel were highly skilled class action litigators, the defendants were represented by a leading law firm, and both parties vigorously litigated the case).

As mentioned above at pp.3-5, this action was also litigated extensively in New Jersey State Court at both the trial and appellate level, which involved complex procedural issues as to the sufficiency of a voluntary dismissal. Had Plaintiff not prevailed in the state court action, Defendants might have successfully estopped this action from going forward. Thus, had Plaintiff not succeeded in that part of this litigation, there may have been no settlement for the class. Accordingly, Plaintiff's counsel's work on this litigation was essential to the settlement here and that work should be compensated.

By defeating Defendants' first motion to dismiss, Plaintiff's counsel put Defendants in a position where they had to concede liability. Given Defendants' limited financial resources, the settlement terms that Plaintiff's counsel achieved for Class members is remarkable. To reiterate, while a Class member could receive $500 for each statutory violation, here a Class member can receive between $125 and $875 in cash benefits depending on whether the Class member retained the facsimile(s) and the number of facsimile(s) received, in addition to courses consisting of 7.0 MCLE credits that have a monetary value of $230.

In sum, Plaintiff's counsel's conduct throughout the entire litigation justifies the requested fee award.

**4.  The Litigation Involved Complex Legal Issues And Was Of Significant Duration.**

As raised by Defendants' two motions to dismiss, this litigation involved complex legal issues of relatively novel impression given the limited number of reported decisions in this type of action and that this area of law is still unsettled. In terms of difficulty and complexity, the legal issues were not easy.  Defendants' first motion to dismiss argued that under New Jersey law, which does not allow a TCPA action to be maintained as a class action in state court, also bars a TCPA action from being maintained in federal court.   Defendants also argued that the court lacked jurisdiction under the so-called "local controversy" or "home-state" exception contained in the Class Action Fairness Act, 28 U.S.C. ¶¶ 1332 (d)(4)(A) & (B).   Under this exception, district courts are required to decline jurisdiction under the Class Action Fairness Act, which was the only statute under which Plaintiff could have brought this class action case before the Supreme Court decided *Mims*, *supra* in 2012 , where two-thirds or more of the members of the proposed plaintiff classes and the primary defendants are citizens of the state in which the action was originally filed.

If Defendants had won this motion, this action would not have been prosecutable as a class action in any forum in New Jersey at that time.  The settlement negotiations were time consuming and complex, as Defendants offered

46

convincing proof that they could not pay a cash award greater than their insurer was offering.

In terms of duration, though this case did not go to discovery, given that this case was commenced in July 2011, this case has taken quite some time to resolve. Both parties settled because they realized the difficulties of trying this case.

### 5.   The Risk of Nonpayment

Although there is a risk of non-payment in any action involving contingency fees, this *Gunter* factor mainly relates to whether the defendant is in a precarious financial position. *See Gunter,* 223 F.3d at 199 (finding risk of non-payment to be high when "the defendants were close to insolvency"); *compare with O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("[Defendant] is financially stable and no one has questioned its ability to pay. This factor is not relevant in this case.").   Here, Defendants are a relatively small business in a competitive field of providing CLE.   Through settlement discussions and the sharing of financial information, Plaintiff's counsel learned that Defendants do not have much liquidity.   Bellin Decl., ¶ 6; Eilender Decl., ¶ 8.   If the case had not settled and that Defendants were unable to dismiss the action, Defendants would have almost certainly contemplated filing a bankruptcy petition.

### 6.    <u>Plaintiff's Counsel Devoted Substantial Time and Resources to This Case.</u>

To date, Attorney Bellin and his firm has spent 185.2 hours on this case and Attorney Eilender and his firm have spent 413 hours on this matter, for a total of 598.2 hours.  Bellin Decl. ¶¶ 7-10, Eilender Decl. ¶¶ 9-12.

Plaintiff's counsel devoted a substantial amount of time and resources to litigating this case up to now, including drafting the Complaint, successfully defeating a motion to dismiss and a motion to stay, defeating Defendants' attempts, all the way to the New Jersey Supreme Court, to have this case treated on an individual basis and estop Plaintiff from pursuing this action in federal court, and engaging in extensive settlement discussions with Defendants including two full days of mediation and then making the motion to have the settlement preliminarily approved by the Court.  The time expended on this case represents a substantial commitment to this litigation, and in light of the defenses mounted by Defendants and the complexity of the issues, was necessary for the successful prosecution of this case.

Plaintiff's counsel respectfully submits that because of the significant work already done by proposed class counsel that this factor weighs in favor of approving the fee request.

**7.**   **Counsel's Fee Request Is In Line With That In Similar Cases.**

The court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated on the open market. *McGee v. Continental Tire North America, Inc.,* No. 06-6234, 2009 WL 539893, at *15 (D.N.J. March 4, 2009). The second factor is addressed in Point 9 below. As to the first inquiry, "most fees appear to fall in the range of nineteen to forty-five percent." *In re Ikon Office Solutions,* 194 F.R.D. at 194. Generally, 33 1/3% is a standard figure for recovery in a class action of the contingent-fee variety. *See, e.g., Martin v. Foster Wheeler Energy Corp..,* No. 06-878, 2008 WL 906472, at *5 (M.D. Pa. March 31, 2008) (noting that for a settlement of $1.64 million "district courts have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses ..."); *In re Corel Corp. Sec. Litig.,* 293 F.Supp.2d 484, 495-98 (E.D.Pa. 2003) (awarding one-third of $7 million settlement fund); *In re Ravisent Technologies, Inc. Sec. Litig.*, CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ("courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses"); *Auto. Paint*., 2008 WL 63269, at *4-8 (awarding requested fees of one third of the multi-million dollar settlement fund); *In re Remeron Direct Purchaser Antitrust Litig*.,03-0085 (FSH), 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005) (awarding fees of one-third of $75 million

settlement fund); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (awarding a fee of one-third and noting that "[t]he requested percentage is in line with percentages awarded in other cases"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (awarding 1/3 of a $48 million settlement fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (an "award of one-third of the fund for attorneys' fees is consistent with fee awards" by district courts in the Third Circuit); *In re Greenwich Pharm. Sec. Lit.*, No. 92-3071, 1995 WL 251293, at *6 (E.D. Pa. April 26, 1995) (holding that "[a] fee award of 33.3 percent is in line with the fee awards approved by other courts"); *In re FAO, Inc. Sec. Litig.*, Nos. 03-942, 03-6596, 2005 WL 3801469, at *2 (E.D. Pa. May 20, 2005) (awarding fees of 30% and 33%).

Although there are few reported TCPA class actions, a fee award of one-third has been approved.  *See Vandervort v. Balboa*, --- F. Supp.2d ___, 2014 WL1274049, *7 (C.D. Cal. 2014)(awarding $1.1 million in attorney's fees where TCPA settlement was for $3.3 million).  In one TCPA case where the maximum cash settlement was $950,000, the court approved attorney's fees of $300,000.   ; *Bellows v. NCO Fin. Sys., Inc.*, 3:07-CV-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008), and *Bellows v. NCO Fin. Sys., Inc.*, 07-CV-1413 W (AJB), 2009 WL 35468 (S.D. Cal. Jan. 5, 2009); see *also Grannan v. Alliant Law Grp.*,

50

*P.C.*, C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) (approving attorney's fees of $250,000 in a TCPA case settling for $1,000,000); *Arthur v. Sallie Mae, Inc.*, 10-CV-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sept. 17, 2012) (granting request for $4,830,000.00 in attorney's fees and costs which represented 20% of settlement fund); *Adams v. AllianceOne, Inc.,* 08–CV–248–JAH (S.D. Cal. Sept. 28, 2012) (granting request for 30% of the Settlement Fund for a total award of $2,700,000).

Moreover, this percentage is consistent with class action awards in other types of cases nationwide.[3]

In this case, where the total settlement fund is $3,026,290.00 million, the 33 1/3% number is certainly justified.

---

[3]   *See, e.g., Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910 at *8 (S.D.N.Y. Oct. 5, 2012) (granting fee request of one-third of common fund in class action settlement); *Chavarria v. New York Airport Serv.*, LLC, 2012 WL 2394797, at * (E.D.N.Y. June 25, 2012) (one-third fee award); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. July 29, 2011) (one-third fee award); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 (E.D. Cal. 2010) (one-third fee award); *Spann v. AOL Time Warner, Inc.,* 2005 WL 1330937 at *9 (S.D.N.Y. June 7, 2005) (one-third fee award); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (one-third fee award); *In re Blech Sec. Litig.*, 2002 U.S. Dist. LEXIS 23170, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (one-third fee award); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) (awarding fees that comprised one-third of the $39.36 million settlement); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 735 (E.D.Pa.2001) ("In re Rite Aid") (a review of 289 settlements demonstrating "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third").

### 8.   **Class Counsel Exclusively Prosecuted This Case.**

Courts in this Circuit must consider whether Plaintiff's Counsel benefitted from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165 (citation omitted). Here, Plaintiff's Counsel never relied on the Government or other public agencies to do their work for them as has occurred in some cases. *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *14 (E.D. Pa. Nov. 20, 2012) (approving final settlement holding, "There is no contention, by objectors or otherwise, that the settlement could be attributed to work done by other groups, such as government agencies"). Plaintiff's Counsel's sole efforts to resolve this case, without assistance from any other group, resulted in this settlement. Accordingly, this factor weighs in favor of Plaintiff's Counsel's requested fee award.

### 9.   **The Requested Fee Is Consistent With Private Contingent Fee Agreements.**

The percentage-of-the-fund method of awarding attorney's fees in class actions should approximate the fee that would be negotiated if the lawyer were offering the services in the private marketplace. *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *16–17 (D.N.J. Nov. 9, 2005) ("The object ... is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible.") (quoting *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir.1992)); *In re Synthroid Marktg. Litig.*, 264 F.3d

712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

Here, the requested fee of 33 1/3% is also consistent with a privately negotiated contingent fee in the marketplace. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class commercial litigation." *In re Ins. Brokerage Antitrust Litig.*, 2013 WL  3956378, at *19(quotation and citation omitted); *see also In re Orthopedic Bone Screws Products Liability Litig.*, No. 1014, C.A. 97-381, 2000 WL 1622741, at *7 (E.D. Pa. Oct.23, 2000) ("the court notes that plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery"); *In re Processed Egg Prod.*, 2012 WL 5467530, at *5 (E.D. Pa. Nov. 9, 2012) (finding "contingency fees of 30 percent or higher are standard"). Thus, the requested fee award is strongly supported by both subparts to this *Gunter* factor.

### 10.   Innovative Terms Of Settlement.

The Settlement contains some creative terms in that it allows for Claimants who do not retain a facsimile to recover upon their presentation of a suitably detailed affidavit or declaration and it includes a valuable non-cash component of CLE courses.   If there is money left over from the distribution to those Class

members who made claims, then pursuant to Paragraphs 8(iii) and 10(c) of the Settlement Agreement, even persons who have not even submitted a claim but whose facsimile numbers the Defendants have dialed and who can successfully be contacted by mail, will also get a cash benefit.  Thus, this factor weighs in favor a decision to award fees.

For the foregoing reasons, Class Counsel has satisfied the *Prudential/Gunter* factors to justify a fee award in the amount of one-third of the Settlement Amount

**B.**     **A One-Third Fee Award is Reasonable Under the Lodestar Cross-Check.**

While the final attorney hours are not in as Plaintiff's counsel is still working on this matter, at this stage the requested attorneys' fees are also reasonable under the lodestar method**.**  The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case.[4]  The Third Circuit applies the lodestar cross-check "as a means of assessing whether the percentage-of-recovery award is too high or too low." *In re Diet Drugs*, 582 F.3d at 547, n. 42 (citing *Rite Aid*, 396 F.3d at 306-07).

---

[4]  *Third Circuit Task Force Report, Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class"); *see also, In re Avandia Marketing, Sales Practices and Prod. Liability Litig.*, 2012 WL 6923367, at *8 (E.D. Pa. Oct. 19, 2012) (*quoting Rite Aid*, 396 F.3d at 305-306) ("When used as a cross-check, the lodestar analysis may be abridged, requires 'neither mathematical precision nor bean counting,' and need not involve a review by the district court of actual billing records").

*See also Lachance v. Harrington*, 965 F. Supp. 630, 649 (E.D. Pa. 1997) (quoting *General Motors*, 55 F. 3d at 822) (court "use[d] the lodestar method to assure that the precise percentage awarded [did] not create an unreasonable hourly fee").

The lodestar cross-check requires a two-prong analysis. First, the lodestar is calculated by multiplying the hours expended by the attorneys' reasonable rates. *In re AT & T Corp.,* 455 F.3d at 164*; In re Gen. Motors,* 55 F.3d at 819 n. 37. Second, the requested fee award, determined using the percentage-of-fee recovery method, is divided by the lodestar.  *In re AT & T Corp.,* 455 F.3d at 164. The resulting number is the lodestar multiplier. *Id.* Judicial approval of the multiplier is "discretionary and not susceptible to objective calculation." *In re Prudential,* 148 F.3d at 340.

Although "the multiplier need not fall within any pre-defined range," *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 307, the Third Circuit has recognized that multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.' " *In re Cendant PRIDES,* 243 F.3d at 742 (quoting *In re Prudential,* 148 F.3d at 341).  *See Milliron v. Mobile USA, Inc.,* 423 F. Appx 131, 135 (3d Cir. 2011); see also *In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) *amended,* MDL NO. 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (recognizing that from 2001 to 2003, the average multiplier in common fund cases was 4.35); *In re Diet Drugs,*

582 F.3d 524, 545 n. 42 (3d Cir. 2009) (citing *In re Cendant Corp.,* 243 F.3d at 742 ("strongly suggest[ing]" a multiplier of 3 as the ceiling for an award in a simple case where "no risks pertaining to liability or collection were pertinent").

Through September 17, 2014, Attorney Bellin worked 174.5 hours on this case at his customary billing rate of $400.00 per hour.  Bellin Decl. ¶¶ 7-8.  Anne Harnes, Esq., Mr. Bellin's Senior Associate, worked 10.7 hours on this case at her customary billing rate of $300 dollars an hour.  *Id.* ¶ 9.   In total, Attorney Bellin's firm billed 185.2 hours for a total of  $73,310.00 in fees.  *Id.* ¶ 10, and Exhibit 1, the billing slips for Attorney Bellin's firm.

Attorney Eilender and his firm have worked 413 hours on this case at attorney hourly rates ranging from $475 to $325 and paralegal rates at $130 per hour, for a total amount of $137,478.50 in fees.  Attorney Eilender billed at $475 but only worked 21.6 hours on the case, whereas most of the work was performed by attorneys billing between $325 and $375 an hour.  Eilender Decl. ¶¶ 9-10.

The attorneys from Eilender's firm who worked on this case are well trained and experienced.   Andrew S. Harris (who worked 126.10 hours on this case) graduated from Stanford Law School in 2004 and clerked for a federal district judge.  Raffi O. Melkonian (who worked 50.8 hours) graduated from Harvard Law School in 2005 and clerked for a federal circuit court judge.  David G. Abrams (who worked 170.3 hours) graduated from Cardozo Law School in 2007.  Niall D.

O'Murchadha (who worked 2.8 hours) graduated magna cum laude from Fordham Law School in 2003.  Hilary S. Zilz (who worked 0.3 hours) graduated from Harvard Law School in 1994.  *See* Eilender Decl. ¶ 11 and Exhibit 1, the billing entries for Attorney Eilender's firm.

In addition, several paralegals from Attorney Eilneder's firm worked on this case at a billing rate of $135 per hour including: Cullen Byrne (5.3 hours) , Jae-Hee H. Honey (3.8 hours), Amelia Hritz (0.3 hours), Leonardo Moauro (7.0 hours), Julia H. Sear (12.0 hours), and Peter I. Willumsen (12.7 hours).  *See* Eilender Decl. ¶ 12 and Exhibit 1, the itemized billing entries for Attorney Eilender's firm.

Thus, the current total fees are $210,788.50.

In addition, the total amount of expenses and disbursements is $169.20 for Attorney Bellin and $15,429.99 for Attorney Eilender's firm, for a total of $15,599.19 that Plaintiff's counsel will seek reimbursement for.  Bellin Decl. ¶ 11 and Exhibit 1 at pp. 9-10 for itemized expenses; Eilender Decl. ¶ 13 and  Exhibit 2, list of expenses for Attorney Eilender's firm.

Generally, a reasonable hourly rate is calculated according to the "prevailing market rates in the relevant community," requiring the court to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org. v. Honeywell*

*Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005) (quoting *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001)); *accord Evans v. Port Auth. of New York & New Jersey,* 273 F.3d 346, 360–61 (3d Cir. 2001).   Here, the above rates for experienced litigation and class counsel are reasonable. *See*, *e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 86 Fed. R. Serv. 3d 654 (D.N.J. 2013) (finding that average rate for class counsel of $411.16 is reasonable); *Bass v. Dellagicoma*, CIV. 10-1195 KSH, 2013 WL 3336760, at *3 (D.N.J. June 28, 2013) (finding that attorney rates of up to $500 for experienced counsel are reasonable); *Kumon N. Am., Inc. v. Timban*, CIV.A. 13-4809 RBK, 2014 WL 2932653, at *12 (D.N.J. June 27, 2014) (finding that an hourly rate of $450.00 for experienced litigators is reasonable).

Here, one-third of the total settlement fund of $3,026,290 is $1,008,763.33. Using the lodestar cross-check of $210,788.50 in fees incurred to date results in a multiplier of 4.78. The multiplier of 4.78 is reasonable given the excellent result and the contingent nature of Plaintiff's counsel's engagement.  *See, e.g., Frederick v. Range Resources Appalachia, LLC*, No. 08 cv 288, 2011 WL 1045665, * 13 (E.D. Pa. March 17, 2011) (citing cases approving multiplier of 5.95); *In re Rite Aid Corp. Sec. Litig.,* 362 F.Supp.2d 587, 589–90 (E.D. Pa.2005) (approving a fee award with a multiplier of 6.96); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* No. 03-4578, 2005 WL 1213926, *18 (E.D. Pa.2005) (awarding

fees with a lodestar multiplier of 15.6); *In re R.J.R. Nabisco Sec. Litig.,* MDL No. 818(MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (approving request for fees and expenses resulting in a lodestar multiplier of 6); *Muchnick v. First Fed. Sav. & Loan Assoc.,* No. 86-1104, 1986 WL 10791 (E.D. Pa. 1986) (approving fee request of $250,000 from a settlement fund of between $4 million and $6.8 million, resulting in a lodestar multiplier of 8); *Cosgrove v. Sullivan,* 759 F.Supp. 166 (S.D.N.Y.1991) (approving fee representing a lodestar multiplier of 8.75); *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 197-98 (S.D.N.Y.1995) (approving attorney's fee award with a lodestar multiplier of 5.5). Moreover, courts have recognized that where counsel's compensation is contingent on recovery, a premium above counsel's hourly rate may be appropriate. *See Gunter v. Ridgewood Energy Corp.,* 233 F.3d 190, 199 (3d Cir. 2000) ("[T]he risk counsel takes in prosecuting a client's case should also be considered when assessing a fee award.").

## III.   THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE REWARD.

Plaintiff's Counsel will request that the Court approve the payment of an incentive award for named Plaintiff Fitzgerald of $5,000.

A number of reasons support granting incentive awards to class representatives: "(1) just as with class counsel, the class representatives have conferred a benefit on all class members by their willingness to bring the litigation;

(2) class representatives should be rewarded for taking action that is in the public interest; and (3) public policy favors compensation for class representatives for taking on risks of litigation on behalf of absent class members." *Sullivan v. DB Investments, Inc.*, CIV.A. 04-2819 SRC, 2008 WL 8747721, at * 37 (D.N.J. May 22, 2008).

Fitzgerald has spent a significant amount of his own time and expense litigating this case on behalf of the absent members of the Settlement Classes and should be compensated for his effort. Fitzgerald selected counsel, provided documents necessary to prepare the Complaint, and attended approximately seven hours of mediation. Fitzgerald Decl. at ¶ 5. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class. ") (quotation and citation omitted). The amount requested for the class representatives is similar to awards in analogous settlements. *See Perry v. Fleetboston Financial Corp.,* 229 F.R.D. 105, 126 (E.D. Pa. 2005) (awarding $5,000 to each of three class representatives); *In re Greenwich Pharm. Sec. Litig.,* CIV. A. 92-3071, 1995 WL 251293, at *8 (E.D. Pa. Apr. 26, 1995) (awarding $5,000 to five class representatives); *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F. Supp. 525, 535 (E.D. Pa.1991) (awarding $5,000

to class representatives)).   Accordingly, a $5,000 incentive award is fair and reasonable.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) approving the class settlement; (2) approving Plaintiff's attorneys' application for fees, costs and expenses, and (3) approving an incentive award for Plaintiff.

Dated: New York, New York
         September 18, 2014

Respectfully submitted,

**BELLIN & ASSOCIATES LLC**

By: /s/Aytan Y. Bellin
        Aytan Y. Bellin, Esq.
White Plains, NY 10606
Tel: (914) 358-5345
Fax: (212) 571-0284
Aytan.Bellin@bellinlaw.com

        -and-

**SCHLAM STONE & DOLAN, LLP**
Jeffrey M. Eilender, Esq.
26 Broadway
New York, NY 10004
Tel: (212) 344-5400
Fax: (212) 344-7677
E-Mail: jme@schlamstone.com